# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

TERRI L. BRAGG,                          )
                                         )
            Plaintiff,                   )
                                         )
        v.                               )    No. 09 C 7102
                                         )
CATERPILLAR INC.,                        )
                                         )
            Defendant.                   )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Caterpillar Inc.'s (Caterpillar) motion for summary judgment. For the reasons stated below, the court grants the motion for summary judgment.

## BACKGROUND

Plaintiff Terri L. Bragg (Bragg) contends that she began working for Caterpillar in March 2005. Bragg, who is an African American female, claims that she was subjected to harassment in the workplace and was held to more stringent terms and conditions of employment than male co-workers and non-African American co-workers. Between March 2005 and October 2006, Bragg received poor work performance ratings. Bragg was also the subject of various disciplinary actions

1

due to workplace rule violations, poor work performance, and delays in production. The disciplinary actions took the form of verbal counselings, written warnings, suspensions, and demotions. Bragg contends that the disciplinary rules were applied more stringently and harshly to her than to her co-workers. Bragg also contends that she was held to higher production standards than her co-workers and that, unlike her co-workers, she was given certain production quotas. Bragg also contends that her work performance was impaired when, for example, her machine was allegedly sabotaged by a co-worker, and when her machine was allegedly improperly programmed before her shift. In October 2006, Bragg's employment was terminated. Bragg contends that during her employment, she was discriminated against at work because of her race and gender. During the course of her employment, Bragg filed three charges of discrimination with the Equal Employment Opportunity Commission (EEOC Charges). Bragg contends that she was also discriminated against at work in retaliation for filing the EEOC Charges.

Bragg includes in her *pro se* complaint a claim alleging discrimination because of her race in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq.*, and a Title VII gender discrimination claim. Bragg also includes in her *pro se* complaint claims alleging discrimination because of her disability in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12111 *et seq.*, and claims alleging discrimination because of her age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* In addition, Bragg indicates in her *pro se* complaint that she is bringing a Title VII

retaliation claim, an ADA retaliation claim, and an ADEA retaliation claim.  Bragg also includes allegations in her *pro se* complaint regarding alleged harassment because of her gender and race, indicating that she was pursuing a Title VII hostile work environment claim based on her race and a Title VII hostile work environment claim based on her gender.  After filing the *pro se* complaint, Bragg retained counsel, who filed an appearance on February 26, 2010.

On March 25, 2010, the court granted, without objection by Bragg, Caterpillar's motion to dismiss all claims brought under the ADA and ADEA.  Bragg also indicated in response to the instant motion for summary judgment and in the joint initial status report filed with this court that Bragg did not intend to bring Title VII hostile work environment claims.  (SJ Ans. 1-5); (J Status R Par. 1, 4, 5).  Caterpillar has moved for summary judgment on the remaining Title VII gender discrimination claim, Title VII race discrimination claim, and Title VII retaliation claim.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009).  In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). In ruling on a motion for summary judgment, the court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

# DISCUSSION

## I.  Title VII Race and Gender Discrimination Claims

Caterpillar moves for summary judgment on the Title VII race and gender discrimination claims.  To defeat a defendant's motion for summary judgment on Title VII discrimination claims, a plaintiff can proceed under the direct or indirect method of proof.  *Montgomery v. American Airlines, Inc.*, 626 F.3d 382, 393 (7th Cir. 2010).  To proceed under the direct method of proof, a plaintiff must point to "direct evidence of-or sufficient circumstantial evidence to allow an inference of-intentional [unlawful] discrimination by [the defendant.]"  *Id.* (stating that "[r]egardless of the type of evidence presented, [the plaintiff] may avoid summary judgment only by presenting sufficient evidence to create a triable issue as to whether his demotion had a discriminatory motivation"); *see also Sylvester v. SOS Children's Villages Illinois, Inc.*, 453 F.3d 900, 903 (7th Cir. 2006)(stating that a plaintiff could show "a convincing mosaic of circumstantial evidence as an alternative 'direct' method to direct evidence of establishing the prima facie case")(internal quotations omitted).  In the instant action, Bragg has not pointed to sufficient evidence to proceed under the direct method of proof and has, in fact, instead argued that she can proceed under the indirect method of proof.  (SJ Ans. 3-5).

To proceed under the indirect method of proof, a plaintiff must establish a *prima facie* case by showing: "(1) that [s]he was a member of a protected class, (2)

that [s]he was performing h[er] job satisfactorily, (3) that [s]he suffered an adverse employment action, and (4) that [the defendant] treated a similarly situated individual outside [the plaintiff's] protected class more favorably." *Montgomery*, 626 F.3d at 393. If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant "to identify a legitimate, nondiscriminatory reason for the action taken." *Id.* If such a reason is identified, the burden shifts back to the plaintiff to show that the "proffered reason was a pretext for [unlawful] discrimination. *Id.* Caterpillar argues that Bragg cannot establish a *prima facie* case. Caterpillar also argues that it has provided legitimate non-discriminatory reasons for its actions and Bragg has not pointed to sufficient evidence to show that the reasons were a pretext for unlawful discrimination.

### A. *Prima Facie* Case

Caterpillar argues that Bragg has not established a *prima facie* case because Bragg has not pointed to sufficient evidence showing that she was performing her job satisfactorily at the time of the adverse employments actions or at any period during her employment. Caterpillar also argues that Bragg has not identified similarly-situated employees outside the protected classes who were treated more favorably than her.

### 1. Lack of Evidence Showing Performing Job Satisfactorily

Caterpillar contends that in the relatively short span of time between March

2005 and October 2006, when Bragg was employed at Caterpillar, there was a long and documented history of Bragg's workplace violations and poor work performance. Caterpillar asserts that in the approximate year and a half of employment, Bragg was verbally counseled numerous times by multiple different supervisors, received five written warnings, was suspended six times, demoted twice, and finally discharged. Bragg admits to being counseled, warned, suspended, demoted, and discharged, but argues that such actions were taken because she was treated more harshly than her male co-workers and non-African American co-workers.

### a. June 1, 2005 Unsatisfactory Performance

Bragg admits pursuant to Local Rule 56.1, in response to statement of material fact paragraph 6, that on June 1, 2005, she received an overall performance rating of "unsatisfactory" for the time period between March 7, 2005 and May 30, 2005. (R SF Par. 6). Bragg has not pointed to evidence in response to Caterpillar's statement of material fact paragraph 6 showing that her male co-workers or non-African American co-workers performed their work in a similar manner and received "satisfactory" performance ratings. (R SF Par. 6).

### b. June 2005 Demotion

Bragg admits pursuant to Local Rule 56.1, in response to statement of material fact paragraph 7, that she was demoted in June 2005 because of her unsatisfactory

performance, including her consistently low production and poor quality. (R SF Par. 7). Bragg denies that the given basis for the demotion was accurate, but she bases her denial on the fact that "Dave Hinton [kept] telling [her] what a great job [she] was doing." (R SF Par. 7). However, Bragg has not pointed to evidence indicating that Dave Hinton (Hinton) made the decision to demote her. Bragg testified at her deposition that her sole reason for concluding that Hinton took part in the decision was that he was present at the meeting with Thomas Ames (Ames) and other management when Bragg was informed of the demotion. (Bragg dep. 182-83). Caterpillar has pointed to evidence showing that Bragg's supervisor, Ames, made the decision to demote her. (SF Par. 7). Bragg, in fact, acknowledges in response to Caterpillar's statement of material fact paragraph 7 that it was "Ames' demotion." (R SF Par. 7). Bragg also contends that Ames and other supervisors made jokes about personal matters of Bragg, but Bragg fails to show how, even if true, such jokes show that the basis given for her demotion was not accurate. (R SF Par. 7).

Bragg also points out that she testified at her deposition that "Ames' demotion was based on discrimination" citing pages 182 and 183 of her deposition. (R SF Par. 7). However, Bragg has not shown that her testimony was based on any facts or evidence. Bragg testified: "I can't speak on exact – his actual motive, but I believe it stimulated from me being injured. . . ." (Bragg dep. 183). Bragg did not give any solid factual basis for her belief that Ames made his decision to demote Bragg based on an unlawfully discriminatory motive. (Bragg dep. 182-83). Bragg cannot create a genuine issue of fact based on her own personal speculation. *See Springer v.*

*Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008)(stating that "[i]t is well-settled that speculation may not be used to manufacture a genuine issue of fact")(internal quotations omitted)(quoting *Amadio v. Ford Motor Co.,* 238 F.3d 919, 927 (7th Cir. 2001)).

Bragg further testified that she "didn't feel the reason that they gave was adequate" and contended that she believed that she could have been moved laterally to another position. (Bragg dep. 183). However, Title VII prohibits unlawful discrimination and does not provide plaintiffs with a basis to second-guess the wisdom of employers' decisions. *See, e.g., Blise v. Antaramian*, 409 F.3d 861, 867 (7th Cir. 2005)(stating that courts "'do not sit as a superpersonnel department' where disappointed applicants or employees can have the merits of an employer's decision replayed to determine best business practices")(quoting in part *Holmes v. Potter*, 384 F.3d 356, 361-62 (7th Cir. 2004)). Thus, Bragg has not pointed to evidence showing that the given reason for her June 2005 demotion was inaccurate.

c. June 2005 Verbal Counseling

Bragg admits pursuant to Local Rule 56.1, in response to statement of material fact paragraph 11, that in June 2005, she was verbally counseled on multiple occasions for unsatisfactory performance. (R SF Par. 11). Specifically, Bragg admits to being verbally counseled on eight occasions in June 2005 for various workplace violations. (R SF Par. 11). Bragg has not pointed to evidence, in response to Caterpillar's statement of material fact paragraph 11, showing that

Bragg's male and non-African American co-workers were not being verbally counseled at that time for such workplace violations.  (R SF Par. 11).

### d.  July 2005 Verbal Counseling and Written Warnings

Bragg admits pursuant to Local Rule 56.1, in response to statement of material fact paragraph 12, that in July 2005 she was verbally counseled.  (R SF Par. 12).  Bragg also admits that she was given two written warnings for unsatisfactory performance.  (R SF Par. 12).  Bragg has not pointed to evidence, in response to Caterpillar's statement of material fact paragraph 12, showing that Bragg's male and non-African American co-workers were not being verbally counseled or being given written warnings for unsatisfactory performance during that general time period.  (R SF Par. 12).

### e.  August 2005 Verbal Counseling and One-Day Suspension

Bragg admits pursuant to Local Rule 56.1, in response to statement of material fact paragraph 13, that in August 2005, she was verbally counseled and given a one day suspension.  (R SF Par. 13).  In statement of material fact paragraph 13, Caterpillar asserts that Bragg was verbally counseled for low production and abusing personal time and was suspended for breaking a "matched rack" on a spline roller, resulting in more than $7,000 in damage and a significant delay in production.  (R SF Par. 13).  Bragg responds to Caterpillar's statement of material facts paragraph 13 by arguing that she did not actually break the spline roller and that it was Don Ivemeyer

(Ivemeyer) that "sabotaged" the spline roller. (R SF Par. 13). The court notes that in the filings by the parties, Bragg has spelled the name "Ivemeyer" as "Igerymeyer," (SAF Par. 3), and Caterpillar has spelled the name as "Ivemeyer," (SF Par. 10), and "Igermeyer." (R SAF Par. 3). For the purposes of consistency, the court will refer to the individual as Ivemeyer, as reflected in Caterpillar's statement of facts. Bragg fails to point to evidence showing that Ivemeyer played any role in deciding to suspend Bragg or that any individual that made the decision to suspend Bragg knew with any certainty that Ivemeyer had "sabotaged" the spline roller and that Bragg was therefore not responsible for the damage and delay in production. (R SF Par. 13); (Bragg dep. 190).

### f. Discipline and Evaluations Between November 2005 and April 2006

Bragg admits pursuant to Local Rule 56.1, in response to statement of material fact paragraphs 15 through 19, that she received poor evaluations and was disciplined for workplace deficiencies between November 2005 and April 2006. Specifically, Bragg admits that during that period she received a performance rating of "Unsatisfactory," and that she was verbally counseled, given written warnings for unsatisfactory performance on multiple occasions, and was given suspensions. (R SF Par. 15-19). Bragg also admits that in March and April 2006, Bragg consistently failed to meet the production rate and that in April 2006, she received a written warning for failing to follow instructions and talking on her cell phone while on the shop floor. (R SF Par. 19). Bragg does not respond to Caterpillar's statement of

material fact paragraph 19 by pointing to evidence that shows that male and/or non-African American co-workers were not meeting the production rate but were not disciplined, nor does Bragg deny that she failed to follow instructions or that she was talking on her cell phone on the shop floor.  (R SF Par. 19).

### g.  April 2006 Demotion

Caterpillar asserts in statement of material fact paragraph 20 that Bragg was demoted in April 2006 because of her repeated unsatisfactory performance, including low production, poor quality, and abuse of personal time.  (R SF Par. 20).  Caterpillar also asserts in statement of material fact paragraph 20 that Bragg's gender or race did not play any role in Ames' decisions to counsel, discipline, suspend, or demote Bragg.  (SF Par. 20).  Bragg responds by denying the facts in paragraph 20 and citing to page 89 of her deposition.  (R SF Par. 20).  However, Bragg merely testified in her deposition that she held a personal belief that she was being discriminated against because of her gender and race.  (Bragg. dep. 89).  Bragg provides nothing more than her personal speculation, which is not sufficient to create a genuinely disputed fact. *Springer*, 518 F.3d at 484.

### h.  Discipline in May 2006 and August 2006

Bragg admits pursuant to Local Rule 56.1, in response to statement of material fact paragraphs 22 through 25, that she was disciplined for workplace deficiencies between May 2006 and August 2006.  Specifically, Bragg admits that during that

period she was verbally counseled and received suspensions.  (R SF Par. 22-25).

### i.  Absences in August 2006

Bragg admits pursuant to Local Rule 56.1, in response to statement of material fact paragraph 26, that she was absent from work without approval on three occasions in August 2005.  Caterpillar asserts in statement of material fact paragraph 26 that "[o]n August 22, 25, and 27, Bragg was absent from work unapproved."  (SF Par. 26).  Bragg's only response to paragraph 26 is "admit."  (R SF Par. 26).  Thus, Bragg admits that she was absent from work and that her absence had not been approved.

### j.  August 2006 Suspension and Discharge

Bragg admits pursuant to Local Rule 56.1, in response to statement of material fact paragraphs 28 through 31, that in August 2006 she was suspended for hiding work orders in her locker and lying to her supervisor Byron Paszek (Paszek) about hiding the work orders.  (R SF Par. 29).  Bragg does not deny that work orders were found in her locker.  (R SF Par. 28).  Bragg admits that Paszek was looking for missing work orders from the previous day and that when he searched Bragg's locker, he found ten to twelve work orders.  (R SF Par. 28).  Caterpillar asserts in statement of material fact paragraph 29 that, according to Paszek, he asked Bragg about the missing work orders and Bragg initially stated that she had obtained the work orders that day from the top left drawer of the desk where the orders were

normally located.  (SF Par. 29).  Caterpillar contends that when Paszek asked Bragg a second time where she got the work orders, Bragg repeated her story.  (SF Par. 29).  Caterpillar contends that Paszek then told Bragg that he did not appreciate her lying to him and that, at that point, Bragg admitted that she hid the work orders in her locker the day before and had retrieved them from her locker.  (SF Par. 29).  Bragg contends that she "accidentally" picked up the work orders while cleaning her work area and did not lie or intentionally deceive Paszek.  (R SF Par. 29, 32); (Bragg dep. 242, 246).  However, Bragg has not denied, in response to statement of material fact paragraph 29 or in her deposition, that she failed to be truthful with Paszek in response to his initial questions and attempted to conceal the fact that she had placed the work orders in her locker.  (R SF Par. 29); (Bragg dep. 242, 246, 251-52).  In fact, Bragg indicated at her deposition that she tried to conceal the fact to avoid getting into further trouble.  (Bragg dep. 251-52).  The court also notes that Bragg acknowledged at her deposition that Bragg wrote in her personal notes taken after the incident, "[s]o I did not tell the whole truth at first. . . ."  (Bragg dep. 251-52).

In addition, even if Bragg accidentally left the work orders in her locker, Bragg has not pointed to evidence showing that such conduct would have been excused if it were done by her male or non-African American co-workers.  To the extent that Bragg argues that she should not be subject to discipline for an accidental mistake, Bragg is improperly asking this court to assess the wisdom of her employer's business decisions.  *Blise*, 409 F.3d at 867.  Bragg also testified at her deposition that it was not uncommon for work orders to be missing, but Bragg did

not testify that she had a basis to know whether employees were disciplined for missing work orders or whether employees with Bragg's disciplinary history were found to have placed work orders in a locker or to have lied to a supervisor. (Bragg dep. 241, 243, 246). Bragg denies that the decision to discharge her was not based on her gender or race, but Bragg fails to point to evidence other than her own personal speculation to support her denial. (R SF Par. 31). Thus, based upon all of the above mentioned undisputed facts, Bragg has not shown that she was performing her job at Caterpillar satisfactorily during the relevant periods of employment.

### 2. Failure to Point to Similarly-Situated Employees

Caterpillar contends that for her gender discrimination claim and race discrimination claim, Bragg has failed to point to similarly-situated employees outside the protected classes that were treated more favorably than Bragg. As part of establishing a *prima facie* case, a plaintiff is required to identify a "similarly situated employee[] that [was] directly comparable to the plaintiff in all material respects." *Montgomery*, 626 F.3d at 395; *see also Everroad v. Scott Truck Systems, Inc.*, 604 F.3d 471, 480 (7th Cir. 2010)(concluding that the plaintiff had not established a *prima facie* case because she "failed to identify any other employees at [the defendant employer] who were similarly situated to her"). In Bragg's response to Caterpillar's motion for summary judgment, Bragg argues that her "male coworkers" and "at least two employees outside of her protected racial and gender classes were treated more favorably." (SJ Ans. 3-4). Bragg responds to Caterpillar's statement of

material facts by contending that she "was singled out for discipline and held to a higher standard than other similarly situated employees who were white and/or male." (R SF Par. 35). Bragg also references "similarly situated male employees" in her statement of additional facts and refers to "other employees," and "other similarly situated male and white employees." (SAF Par. 1, 4, 9). In addition, at her deposition, Bragg made general references such as to "other females" that were "white" and were allegedly treated more favorably. (Bragg dep. 96). However, Bragg must identify specific employees that are similarly situated, and thus her general references to similarly-situated employees fails to establish her *prima facie* case. *See, e.g., Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 592 (7th Cir. 2008)(agreeing with the district court that the plaintiff could not establish a *prima facie* case because she "could not identify any similarly situated male employee who was treated any differently than she was"); *Ellis v. United Parcel Service, Inc.*, 523 F.3d 823, 828 (7th Cir. 2008)(stating that the plaintiff's "failure to establish that any other similarly situated manager in an intraracial relationship was treated more favorably doom[ed] his discrimination claim"); *Salas v. Wisconsin Dept. of Corrections*, 493 F.3d 913, 923 (7th Cir. 2007)(concluding that the plaintiff had not met her burden to "identif[y] similarly situated, non-Hispanic employees, who were treated more favorably").

Bragg also indicates in her statement of additional facts that Keith McCallister (McCallister) and Ivemeyer were similarly-situated employees, were outside the protected class, and were treated more favorably than Bragg. (SAF Par. 2-3).

However, Bragg fails to point to evidence in her statement of additional facts or in her response to the motion to summary judgment to show that those employees were comparable in all material respects and thus similarly situated. *See Naik v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 627 F.3d 596, 600 (7th Cir. 2010)(stating that "[s]imilarly situated employees must be 'directly comparable to the plaintiff in all material respects, which includes showing that the coworkers engaged in comparable rule or policy violations'")(quoting in part *Patterson v. Indiana Newspapers, Inc.,* 589 F.3d 357, 365-66 (7th Cir. 2009)); *Dear v. Shinseki*, 578 F.3d 605, 610 (7th Cir. 2009)(stating that "[i]n deciding whether someone is comparable for this purpose, we consider all relevant factors, including whether the employee (1) held the same job description; (2) was subject to the same standards; (3) was subordinate to the same supervisor; and (4) had comparable experience, education, and other qualifications"). Bragg has based her contention that McCallister and Ivemeyer were similarly-situated employees based on her own speculation. (SAF Par. 2-3). Thus, Bragg has failed to satisfy the similarly-situated element of her *prima facie* case.


3. Merging of Elements Two and Four

Bragg also argues that elements two and four of the *prima facie* case should be merged because she contends that Caterpillar's legitimate expectations were applied in a disparate manner. If a plaintiff seeking to defeat a defendant's motion for summary judgment "*produces evidence* sufficient to raise an inference that an

employer applied its legitimate expectations in a disparate manner . . . the second and fourth prongs merge-allowing plaintiffs to stave off summary judgment for the time being, and proceed to the pretext inquiry." *Montgomery*, 626 F.3d at 393 (quoting *Elkhatib v. Dunkin Donuts, Inc.,* 493 F.3d 827, 831 (7th Cir. 2007)). However, the Seventh Circuit has made it clear that a plaintiff "may not 'put[ ] the pretext cart before the prima facie horse by substituting allegations for proof" and that the "prima facie case must be established and not merely incanted.'" *Id.* (quoting *Brummett v. Lee Enters., Inc.,* 284 F.3d 742, 744 (7th Cir. 2002))(declining to "merge the second and fourth prongs and proceed to the pretext inquiry because [the plaintiff did] not support that allegation with any actual evidence of disparate application"). In the instant action, Bragg has put forth conclusory statements that Caterpillar's legitimate expectations were applied in a disparate manner and has presented her personal speculation as to such application, but Bragg has not pointed to sufficient evidence to show that Caterpillar's legitimate expectations were applied in a disparate manner. For example, Bragg has not pointed to evidence showing that other employees outside the protected classes talked on their cell phone while on the shop floor, failed to follow instructions, or were absent from work without approval and were not disciplined in a manner comparable to Bragg. Bragg also made certain references during her deposition to her belief that she was subjected to higher production standards. She testified, for example, that her supervisor required a quota from her and "didn't ask that quota from anybody but me." (Bragg dep. 124). However, Bragg failed to provide any factual details to substantiate that conclusory assertion

and has not provided the court with other evidence to indicate that she, in fact, was the only employee that was asked to meet a quota. Bragg made general reference in her deposition that one employee told Bragg that he had to make "two racks," while Bragg had to make "five racks." (Bragg dep. 124). Bragg, however, fails to provide any detailed statements from the alleged conversation. Nor would some isolated, hearsay statement made by a co-worker be sufficient to create a genuinely disputed fact as to whether Bragg was subjected to a higher production standard.

Bragg states in her statement of additional facts that she acknowledges that she received poor performance ratings and was disciplined, but indicates that the reason for such poor performance was that she was required to meet a higher production standard than other employees. (SAF Par. 1). However, in support of Bragg's assertion, she cites only to her own deposition testimony giving her own personal speculation, which is not sufficient to create a genuinely disputed fact. (SAF Par. 1); *Springer*, 518 F.3d at 484. Bragg also contends that she was treated differently than male co-workers for not using a bathroom in the work area. (SAF Par. 4). However, even if that were true, that would not nullify the many other deficiencies in Bragg's work performance discussed above.

Bragg also contends that she was harassed by Ivemeyer, a co-worker, and that Ames did not address the problem. (SAF Par. 6). However, Bragg has conceded that she is not bringing a hostile work environment claim. To the extent that she is bringing a discrimination claim premised on adverse employment actions, she has not pointed to evidence showing that Ivemeyer had any role in the decisions resulting

in the adverse employment actions.  The court notes that, even if the court had merged elements two and four of the *prima facie* case, Bragg would have failed to establish a *prima facie* case for her gender discrimination claim and race discrimination claim based on her failure to identify similarly-situated employees outside the protected classes that were treated more favorably than Bragg.  Thus, based on the above, Bragg has failed to establish a *prima facie* case in regard to her Title VII race discrimination claim and Title VII gender discrimination claim.

### B.  Pretext

Caterpillar has provided legitimate non-discriminatory reasons for all of its disciplinary actions against Bragg and its termination of Bragg's employment. Caterpillar contends that Bragg has not pointed to sufficient evidence to show that the given reasons were a pretext for discrimination against Bragg because of her race or gender.   The court agrees that Bragg has failed to point to evidence to meet her pretext burden.  For example, although Bragg makes accusations against co-workers like Ivemeyer, she fails to point to sufficient evidence that would indicate that any decision-makers involved in the discipline and discharge of Bragg had an animus against her because of her race or gender and were lying about the given reason for the decisions.  To the extent that Bragg contends that Caterpillar made a mistake in disciplining her because of Ivemeyer's actions, Bragg is improperly seeking to have the court evaluate the wisdom of her employer's business decisions.  *Blise*, 409 F.3d at 867.

The court also notes that to the extent that Bragg contends that Ames, who made the decisions to demote Bragg, had an animus against Bragg because of her gender or race, it is undisputed pursuant to Local Rule 56.1, that Ames was the person that made the decision to hire Bragg. (R SF Par. 3). Bragg also contends that Ames and other supervisors made jokes about personal matters relating to Bragg. (R SF Par. 7); (Bragg dep. 82-85). However, Bragg fails to show how, even if true, such jokes would have related to an animus against her because of her race. (R SF Par. 7). Also, to the extent that the alleged comments touched on the issue of pregnancy and gender, Bragg has not shown that such isolated comments, even when considered with the totality of the evidence, would be sufficient to show pretext. Also, although Bragg contends that she was singled out because of her race and gender, she acknowledged at her deposition that other female co-workers and African American co-workers were not treated in the same manner that she was treated. Bragg stated, for example, that other female employees were not followed to the bathrooms as Bragg claimed happened with her. In addition, when Bragg was asked about the treatment of "other African Americans [] that worked" at Caterpillar, Bragg responded, "I didn't see them treat anyone in the manner of which they treated me." (Bragg dep. 264-65).

Bragg also admitted at her deposition that she did not recall Hinton, Ames, Al King, Herb Hunter, Bill Keaton, Larry Robinson, or Paszek, ever saying anything to Bragg related to her race that she felt was discriminatory in nature. (Bragg. dep. 91-92). Bragg did specifically testify at her deposition that she believes Hinton is a

racist.  (Bragg dep. 94).  However, she failed to provide any basis for her belief. (Bragg dep. 94-95).  Bragg also contends that she was subjected to production quotas when other employees were not subjected to quotas and that she was subjected to higher production quotas than similarly-situated employees outside the protected classes.  (Bragg dep. 124-25); (SAF Par. 1).  However, Bragg has failed to point to sufficient evidence, other than her own speculation, to show that she was the only employee subjected to certain quotas or that she was subjected to higher production quotas.  Bragg's speculation on that issue is not sufficient to create a genuinely disputed issue of material fact.  *Springer*, 518 F.3d at 484.

Bragg's own deposition testimony illustrates that she is speculating as to unlawful animus on the part of Caterpillar.  When asked about whether she was discriminated against because of her race, Bragg testified, "what other reason? I was the only female over there, okay.  I'm a black female."  (R SF Par. 33); (Bragg dep. 97).  Bragg has failed to point to evidence of an animus against her because of her race or gender, and she cannot proceed on her Title VII claims based on speculations and assertions of general unfair treatment.  *See Salas v. Wisconsin Dept. of Corrections*, 493 F.3d 913, 923 (7th Cir. 2007)(stating that the "Court's role is not simply to assess whether an employee was treated unfairly; [the Court] must determine whether he may have been treated unfairly because" of his protected characteristic); *Johal v. Little Lady Foods, Inc.*, 434 F.3d 943, 946-47 (7th Cir. 2006)(stating that "it is not [the court's] role to question the wisdom of a company's decisions on how to run its business, only to assure that such decisions are not

intended to provide cover for illegal discrimination"). In addition, the court notes that although Bragg made allegations in her EEOC Charges that she was being harassed and that her workplace conditions were harsh, which the court has considered in assessing whether there is sufficient evidence of pretext, Bragg is not bringing a hostile work environment claim in the instant action. Therefore, the court grants the motion for summary judgment on the Title VII race discrimination claim and the Title VII gender discrimination claim.

## II. Title VII Retaliation Claim

Caterpillar moves for summary judgment on the Title VII retaliation claim. To defeat a defendant's motion for summary judgment on Title VII retaliation claim, a plaintiff can proceed under the direct or indirect method of proof. *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 677 (7th Cir. 2010); *Hill v. Potter*, 625 F.3d 998, 1001 (7th Cir. 2010). To proceed under the direct method of proof, a plaintiff must establish: "(1) he engaged in a statutorily protected activity; (2) he suffered a materially adverse action by his employer; and (3) a causal link between the two." *Chapin*, 621 F.3d at 677. In the instant action, Bragg has argued that she can proceed under the direct method of proof for the retaliation claim. (Ans. SJ 5-6). Bragg argues that she can show a causal link between the filing of her EEOC charges and her discipline. However, as explained above, the undisputed facts show that the increasing levels of discipline, the demotions, and Bragg's discharge were directly

related to Bragg's poor work performance. Bragg has offered her personal speculation that the actions taken against her were due to her filing of the EEOC charges and complaining about her treatment, but that is not sufficient to create a genuinely disputed issue of fact. In addition, while timing can be circumstantial evidence of retaliation, the mere fact that adverse actions were taken against her after she filed EEOC Charges is not sufficient to show causation. *Leitgen v. Franciscan Skemp Healthcare, Inc.*, 630 F.3d 668, 675 (7th Cir. 2011)(referring to the "general rule that suspicious timing alone is insufficient to support a claim of retaliation"). In addition, Caterpillar asserts in statement of material fact paragraph 20 that the fact that Bragg had filed the EEOC Charges did not play any role in Ames' decisions to counsel, discipline, suspend, or demote Bragg. (R SF Par. 20). Bragg failed to respond to paragraph 20 with a citation to any evidence, other than Bragg's personal speculation in her deposition testimony. (R SF Par. 20). Thus, Bragg has failed to point to sufficient evidence to indicate a causal link between Bragg's protected activity and the adverse actions taken against her. Therefore, Bragg cannot proceed under the direct method of proof.

The court notes that, even if Bragg had sought to proceed under the indirect method of proof, as discussed above, she has failed to point to sufficient evidence to show that she was performing her job satisfactorily, has failed to meet the similarly-situated element of the *prima facie* case, and has failed to show a pretext. To proceed under the indirect method of proof for a Title VII retaliation claim, a

plaintiff must "first show a prima facie case of retaliation, which requires her to produce admissible evidence that (1) she engaged in a statutorily protected activity, (2) the [defendant employer] took a materially adverse action against her, (3) she was performing her job satisfactorily, and (4) she was treated worse than a similarly situated employee who did not complain of discrimination." *Hill*, 625 F.3d at 1001. If the plaintiff establishes a *prima facie* case, the defendant must offer a legitimate non-discriminatory reason for the action and the burden then shifts to the plaintiff to show that the reason is a pretext. *Id.*

In the instant action, as explained above, the undisputed facts show that Bragg has failed to show that she was performing her job satisfactorily during any relevant periods of her employment. In addition, Bragg has failed to specifically identify similarly-situated employees who did not engage in protected activity and who were treated more favorably than Bragg. Finally, Bragg has failed to point to sufficient evidence that the reasons given for the adverse employment actions were a pretext for retaliation. For example, Bragg admits that when Paszek indefinitely suspended Bragg before her discharge, he did not know she had previously filed an EEOC charge. (R SF Par. 30). Bragg relies upon her own personal speculation that the adverse employment actions taken against her were in retaliation for her protected activity. (R SF Par. 31). *Springer*, 518 F.3d at 484. Therefore, the court grants Caterpillar's motion for summary judgment on the Title VII retaliation claim.

**CONCLUSION**

Based on the foregoing analysis, the court grants Caterpillar's motion for summary judgment on the Title VII race discrimination claim, the Title VII gender discrimination claim, and the Title VII retaliation claim.

Samuel Der-Yeghiayan
United States District Court Judge

Dated:  March 28, 2011